RANSOM *v.* HARROUN.*

(Division A.    June 13, 1927.    Suggestion of Error Overruled June 29,
1927.)

[113 So. 206.    No. 26039.]

1. PARTNERSHIP. *Partner paying notes, given for money for operation
of partnership with personal indorsement of partners may re-
cover share from the other.*

Where money for operation of partnership was secured on notes of concern with personal indorsement of partners, neither of whom advanced any appreciable sum in cash, partner advancing money for payment of such notes may recover proportionate share from the other.

2. APPEAL AND ERROR. *Plea of limitations cannot be for first time interposed on appeal.*

Plea of limitations as bar to recovery must be submitted to lower court and cannot for the first time be interposed on appeal.

3. PARTNERSHIP. *Chancellor may refer partnership accounting to master or make his own calculations, in his discretion.*

Discretion relative to ordering reference to master for partnership accounting in complicated cases is vested in chancery court, and chancellor if he so desires may make his own calculations or have counsel do it or refer same to master.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 709, n. 61; Partnership, 30Cyc, p. 441, n. 3; p. 739, n. 94 New; On the general rule that defense of the statute of limitations will not be considered when raised for the first time on appeal, see 17 R. C. L. 986.

APPEAL from chancery court of Leflore county.

HON. C. L. LOMAX, Chancellor.

Suit by A. L. Harroun against F. T. Ransom. Decree for complainant, and defendant appeals. Affirmed.

*S. L. Gwin* and *S. Rosenthal,* for appellant.

The appellee asserts that the partnership existed by virtue of a verbal agreement. Appellant contends, under oath, that no partnership ever existed between him and appellee. The burden of proving the partnership was, therefore, upon appellee. *Wise et al.* v. *Cobb et al.,* 100 So. (Miss.) 189; *Yarbrough* v. *Donoghue,* 99 So. (Miss.) 389.

Should the court hold that there was a partnership upon the evidence introduced in the trial of this case, we contend that the court must necessarily find it to be a partnership in which one partner contributed his time, skill and labor and the other his money. In partnerships

of this kind, the universal rule seems to be that if the firm proves to be a failure, the one contributing the money cannot demand contribution from the one contributing his time and labor. *Heran* v. *Hal* (Ky.), 35 Am. Dec. 178; *Baker* v. *Safe Deposit, etc., Co.*, 90 Md. 744, 45 Alt. 1028, 78 A. S. R. 825. See note in Ann. Cas. 1916D, page 825; 20 R. C. L. at page 930.

The organization of the corporation and the assumption by it, at the instance and with the consent and approval of complainant, released the defendant from his alleged liability for any indebtedness of the defendant to the complainant arising out of the alleged partnership business.

The written contract speaks for itself, and specifically states that the corporation assumed all the indebtedness of the alleged partnership organization. Appellee attempts to exclude the indebtedness of appellant to the organization from this contract. Certainly, he cannot go in the face of the contract and the contrary statement of appellant. 1 Fletcher on Corporations, page 332; 7 R. C. L., page 86; *Shields* v. *Clifton Hill Land Co.*, 94 Tenn. 123; 45 A. S. R. 700; 26 L. R. A. 509.

In the case in controversy, appellant and appellee could be considered promoters only between themselves, and appellee could not maintain a bill against appellant as a partner. Both appellee and appellant agreed to the assumption of all assets and liabilities. Appellant immediately upon the organization of the corporation assigned without any further consideration his stock in the corporation to the appellee. As between the appellant and appellee the old contract was destroyed and a new one made—a novation—and between them they could not sue each other upon the old contract. *Graham* v. *Thornton* (Miss.), 9 So. 292.

The authorities all hold that a partner cannot maintain an action against his co-partner on partnership notes or accounts, even though he may have paid the notes out of his personal funds. His only remedy is for final

settlement and accounting, after which he may sue for the balance. The bill of complaint prayed for an accounting, but the court disregarded the prayer of the bill and gave a personal decree on the notes and accounts sued on. In 21 A. L. R. at 86 is an exhaustive note to the proposition stated.

The Mississippi cases cited in support of the above rule of law are as follows: *White* v. *Waide,* 1 Walk. 263; *Scott* v. *Searles,* 5 S. & M. 25; *Hunt* v. *Morris,* 44 Miss. 314; and *Evans* v. *White,* 31 So. 833. See, also, *Foss* v. *Dawes,* 72 Neb. 608, 101 N. W. 237; *Jones et al.* v. *Cade* (Ala.), 94 So. 255.

The following Mississippi decisions support the proposition that an accounting and final settlement of all the partnership affairs is essential before judgment can be rendered against any partners for any debts due to partners for partnership transactions. *Randle* v. *Richardson,* 53 Miss. 176; *Hunt* v. *Gordon,* 52 Miss. 194; *Davis* v. *Davis,* 60 Miss. 615.

With reference to the notes of the alleged partnership claimed to have been paid by appellee, the statute in such case would run from the date of payment and was at the time of filing of this suit, in all cases, over four and a half years past. *Prewit* v. *Buckingham,* 28 Miss. 92; Gow on Partnership 102; Angell on Lim. (2 Ed.), 160; *Partee* v. *Mathews,* 53 Miss. 141; *Berger* v. *Dempster,* 85 So. 392, 20 Ala. 305.

We contend that all indebtednesses of the alleged partnership were barred at the time of the filing of the bill of complaint in this suit and, therefore, the appellee could not bring suit for contribution on these claims and the chancellor was in error in allowing these claims.

*H. C. Mounger,* also, for appellant.

"On a bill, by a partner for a dissolution the case should be referred to a master with power to examine the partners, to cause production of the books of the firm, and

to state an account between them, each partner being credited with advances to, and charged with receipts from the partnership.'' *Randall* v. *Richardson,* 53 Miss. 176.

There should have been a reference to a master to take and state an account between the partners, if there was a partnership, and Harroun should have been charged with all the assets that were turned over to him at the time that the corporation was formed. He makes no showing as to what he got for them except the bare statement that they were sold and applied to the payment of the debts. *Reid* v. *Freed,* 100 Miss. 48. The complainant has been guilty of laches in bringing his suit. 20 R. C. L., page 1016, Partnership, section 259. See also note citing *Cowan* v. *Hudson,* 105 Miss. 507, 62 So. 275; 45 L. R. A. (N. S.) 720; 8 C. J., page 259, Bills and Notes, section 409. By mutual agreement a corporation was formed. An assignment was duly executed by Harroun and Ransom, transferring all the assets of the business to the Mokano Motor Sales Company. This was just as much an accord and satisfaction as is done when the note of a third person is taken in settlement of an individual debt. See 1 C. J., 548; 50 Miss. 259; *Whitney* v. *Cook,* 53 Miss. 55; *Clayton* v. *Clark,* 74 Miss. 503; *Pulliam et al.* v. *Taylor,* 50 Miss. 257; 1 Fletcher Ency. of Corporations, page 332; 14 C. J. 269-70 and note; 1 Williston on Contracts, section 306; *Bank of Forrest* v. *Orgill Bros.,* 82 Miss. 83, 34 So. 325.

Harroun could not renew the notes himself without the authority of Ransom, and Ransom is not bound by these renewed notes; yet they form the basis in part of the final decree. We submit that the decree of the lower court should be reversed.

*Osborn & Witty,* for appellee.

Harroun and Ransom were partners, not promoters. It was never agreed by the creditors of the partnership

and it was never agreed by Harroun, that the corporation alone should be liable for the debts of the partnership. Therefore, all that is said in appellant's brief about Harroun and Ransom being promotors and about the corporation assuming all the debts and about there being a novation so as to release Ransom from his liability on the debts, is wholly out of place.

Appellant on the trial in the supreme court, for the first time contends that Harroun's claim against Ransom is barred by the statute of limitation. Under the clear and unequivocal holdings of this court it was necessary for Ransom to have plead the statute of limitations in order to avail himself of that defense in this court. *Central Trust Co.* v. *Meridian Light & Ry. Co.,* 64 So. 216; *Y. & M. V. R. R. Co.* v. *McGee-Dean Co.,* 76 So. 264, 115 Miss. 282; *Hines* v. *Potts,* 56 Miss. 346; *Standard Oil Co.* v. *Nat'l Surety Co.,* 107 So. 559, 143 Miss. 841; *Raleigh Co.* v. *Fortinberry,* 97 So. 722, 133 Miss. 467; *Y. & M. V. R. R. Co.* v. *Kirk,* 58 So. 710, 102 Miss. 41, and on suggestion of error reported in 58 So. 834, 42 L. R. A. (N. S.) 1172, Ann. Cas. 1914C 968; *Bridgeforth* v. *Payne,* 62 Miss. 777.; *Boyd* v. *Barrenger,* 23 Miss. 269; *Hines* v. *Potts,* 56 Miss. 346. Not only is the rule we have stated well settled in Mississippi, but it is practically the same everywhere. 37 C. J., page 1221.

But even though the six-year statute had been properly plead, or even though the three-year statute had been properly plead—although neither of these was done—the statute of limitations is of no avail to Ransom. The record shows without any dissent that all three of the debts of the partnership which were paid by Harroun were evidenced by promissory notes, and that all three debts were originally contracted by Ransom himself.

This was a partnership debt contracted by Ransom and on May 1, 1919, the very day when the partnership assets were conveyed to the corporation and the very day when, as the appellant contends and as we are willing to concede, the partnership was dissolved, Ransom executed

new notes for thirty-five hundred dollars to this bank, dated May 1, 1919, signed by Mo-Kan-O Motor Sales Company, unincorporated, by Ransom, and this note was also paid in full by Harroun with his own funds, including fifty-five dollars interest.

This court has itself held that one partner who pays the debts of the partnership is subrogated to the rights of the creditor for the debt he pays, and stands in the shoes of such creditor. *Dalgren* v. *Duncan*, 7 S. & M. 280; 37 Cyc., page 397; *Sands* v. *Durham*, 86 A. S. R. 884; *Schuyler* v. *Booth*, 79 N. Y. S. 1146; *Weast* v. *Wichersham* (Ark.), 195 S. W. 685; *Davis* v. *Abell* (Ky.), 216 S. W. 104.

Other authorities could be cited to show that where one partner pays a debt owing by the firm he as against the other partner is subrogated to the rights of the creditor whom he pays. Our own court in a number of decisions many of which are very recent, has held that the doctrine of subrogation is one designed to do substantial justice and that its operation should be extended rather than restricted. *Robertson* v. *Sullivan*, 59 So. 846, 102 Miss. 581; *Prestridge* v. *Lazar*, 95 So. 837, 132 Miss. 168.

Harroun and Ransom were partners. Each was bound equally for the firm debts. Harroun paid these debts to a large amount, and paid them in full, when he was only required to pay his half. When he went further and paid Ransom's half, Harroun was paying, as far as Ransom's half was concerned, a debt for which Ransom in equity was primarily liable and Harroun only secondarily liable.

If this contention is sound, then Harroun's claim could not be barred by the statute of limitations, even though Ransom plead both the three-year statute and the six-year statute, because Harroun's claim is not governed by the three-year statute and it accrued less than five years before this suit was brought.

Ransom signed a written agreement to pay his one-half of the firm debts and this constituted a new promise

under section 2482, Hemingway's Code. When Ransom signed this agreement he made Harroun's claim against him a claim evidenced by a writing and governed by the six-year statute of limitations. *Hart* v. *Boyt,* 54 Miss. 547; section 2482, Hemingway's Code; *Yarbrough* v. *Gilland,* 77 Miss. 139, 24 So. 170; *W. T. Raleigh Co.* v. *Fortenberry,* 103 So. 227.

Harroun's claim was one which could be proved by writing; that is, by the different notes of the firm which he himself paid out of his own funds and by Ransom's written agreement, and his claim is governed by the six-year statute of limitations. *Blodgett* v. *Pearl River County,* 98 So. 227, — Miss. —; *Cock* v. *Abernathy,* 77 Miss. 872, 28 So. 18; *Fowlkes* v. *Lea,* 84 Miss. 509, 36 So. 1036; *Masonic Benefit Ass'n* v. *Bank,* 55 So. 408.

Appellant says that Harroun was guilty of laches in filing his bill. No such thing as laches as a bar to a suit obtains in Mississippi, and the only lapse of time which can bar a suit is the full period of the statute of limitations. This is so well settled that we will not argue the point, but are content with citing the cases of *Hill* v. *Nash,* 73 Miss. 849, 19 So. 707; *Cox* v. *Mortgage Co.,* 40 So. 739, — Miss, —.

This case. should be affirmed.

McGOWEN, J., delivered the opinion of the court.

Harroun, appellee here, complainant in the court below, exhibited his bill in the chancery court of Leflore county against F. T. Ransom, appellant here, defendant in the court below, in which bill Harroun alleged that beginning in December, 1917, a partnership had existed between complainant and defendant, operating under the firm name of Mo-Kan-O Motor Sales Company, with its main office at Wichita, Kan., and a branch office at Kansas City, Mo.; and that immediately after the formation of this partnership they began dealing in Harroun automobiles and acting as distributors for the manufacturers,

Harroun Motor Corporation. The bill alleged that Harroun and Ransom were engaged in such business as equal partners, were to share equally all profits and losses, and each was to be liable equally for all liabilities incurred by the partnership; that the business was managed and controlled by Ransom, who had exclusive charge of the books of the firm and of the business; that the business was not successful, and on May 1, 1919, said partnership executed to the Mo-Kan-O Motor Sales Company, a corporation organized under the laws of the state of Kansas, a bill of sale of the assets of the partnership, with the exception of the defendant's indebtedness as to the partnership. This corporation was practically the creature of Harroun & Ransom, organized May 1, 1919, and an equal amount of practically all the capital stock was issued to these partners; thereupon the partnership ceased business and has not since engaged in business.

The bill further alleged that there had been no dissolution of the partnership, nor settlement or accounting of any kind between the partners; that Harroun undertook to discover the condition of the partnership and to learn the details of the partnership transactions which had been made, but because of the failure of defendant to keep books and records with regard to its business, he was unable to obtain any accurate data as to the condition of the business and to say accurately what amount Ransom owed the partnership.

Harroun then charged that Ransom should account for seventeen cars of the alleged value of eight hundred eighty-five dollars, and demanded that Ransom account for same.

Harroun then alleged that when the partnership ceased to do business it was indebted to various creditors, which indebtedness he (Harroun) had been compelled to pay, as follows:

First. Two notes to the Union National Bank of Wichita, Kan., in the respective sums of eleven thousand eight hundred twenty dollars and fourteen cents and ten thou-

sand five hundred twenty-six dollars and twenty-two cents, with interest thereon, paid by Harroun on October 18, 1919. These notes were executed by Harroun and Ransom on May 24, 1919, in payment of a pre-existing partnership debt.

Second. Said partnership owed the Commonwealth National Bank of Kansas City, Mo., and executed its note to it for twenty thousand dollars, signed by Mo-Kan-O Motor Sales Company, by A. L. Harroun, which note was renewed and finally paid by him on October 21, 1919, with accrued interest.

Third. On May 1, 1919, said partnership was indebted to the State Bank of Kingman, Kan., in the sum of three thousand five hundred dollars, and on that date the Mo-Kan-O Motor Sales Company (incorporated) executed its note by F. T. Ransom, indorsed on the back by F. T. Ransom and A. L. Harroun, which note Harroun paid on October 28, 1919, with accrued interest.

Fourth. On July 2, 1919, Harroun borrowed twenty-eight thousand five hundred dollars from the Commerce Trust Company, of Kansas City, Mo., on his individual note, the proceeds of which, he alleged, were paid on partnership debts, and paid same on January 12, 1920, with interest.

Harroun further charged that the defendant, Ransom, had paid no debts of the partnership, and, furthermore, that he was largely indebted to the partnership.

The bill charged that Harroun had paid the above-described notes, debts of the partnership, with his individual funds, and had had same assigned to himself; that he is subrogated to the rights of these creditors of the firm, and thereby entitled to a decree for one-half of said sums as paid against Ransom, and for all other sums as shall be discovered to be due Ransom to the partnership, the notes paid being attached as exhibits to the bill.

The bill prayed for an accounting and discovery as follows: As to the specific sums paid by complainant, as to further debts of Ransom, and for a personal decree

in favor of complainant against Ransom for one-half of the amount so found to be due by Ransom to the partnership; and also prayed for an accounting, a discovery, and dissolution of the partnership.

To this bill the defendant filed a demurrer, which was overruled by the court. Thereupon Ransom filed his answer, in which he denied that there ever existed any partnership between complainant and himself; averred that he was employed by Harroun in the capacity of general manager, and that the business was so managed as to keep Harroun constantly in touch with its affairs. He denied Harroun's right to an accounting; averred that he kept the bank account correctly; that he kept such books as Harroun would permit, especially a bound book showing all necessary details of the purchases and sales.

In his answer Ransom set up that the business was only operated temporarily with the view of organizing a corporation; that Moses and Hoffman were to come into the business, and did come into it for a short time; and that he was to receive five thousand dollars per annum for his services as general manager. He denied that he was ever a partner in the business, or that he received any benefit from the proceeds of the notes, but averred that he signed such notes in aid of Harroun and as an accommodation to him upon his agreement to pay the same individually. Ransom denied any and all liability to account, denied that he retained any of the assets, or was indebted in any manner to the complainant, Harroun, but stated that he had fully accounted to complainant for more than six years before the date of filing of this answer.

After hearing much evidence, the chancellor entered a personal decree in favor of Harroun against Ransom for thirty-one thousand five hundred eighty-three dollars and sixteen cents, directing that execution issue for same; and from this decree, defendant prosecutes this appeal.

It is obvious that the chancellor found that a partnership existed between the parties, and that they were to

share in the profits and losses equally, ånd be equally liable for the firm's debt; that they were not promoters of a corporation, and that Ransom did not sign certain notes as accommodation indorser and was not an employee on salary. It is also patent that the chancellor did not charge Ransom with the one hundred ten cars, nor with the twenty-eight thousand dollar-note above described, but did charge him with the first three notes above described, and interest thereon to the extent of one-half thereof.

We have read with care the brief and the evidence given by Harroun and Ransom, together with all references to the record, and from a careful study of the record we are of the opinion that the chancellor was fully warranted in finding the above conclusions of facts against the defendant.

There are assigned by appellant twenty-four errors as grounds for reversal, which we shall not consider except as argued in the briefs.

First. As above stated, the case cannot be reversed on the facts.

Second. Tersely stated, appellant contends that if a partnership existed, it was one in which Harroun furnished the money and Ransom only his time and skill, and that the former could not recover from the latter for advances made, and cites 20 R. C. L., p. 930.

Conceding the rule thus stated to be the law, the facts are not applicable. It appears that the money secured for the operation of the partnership was secured on the notes of the concern with the personal indorsement of Ransom and Harroun, and neither of them seems to have put in any appreciable sum in cash; and the chancellor evidently found that the agreement was that each should be equally liable.

The record teems with letters and documents written by Ransom admitting the partnership; and on May 1, 1919, Ransom wrote and signed a letter addressed to Harroun, and delivered to him that day, in which he says:

"May 1, 1919.

"Mr. A. L. Harroun, Kansas City, Mo.   Dear Al: Confirming our conversation and agreement in regard to the winding up of our partnership affairs which have been transacted under the name of the Mokano Motor Sales Company, and as I am not at the present time in a position to pay my half of the liabilities of said partnership, and as it will probably be necessary for you to personally assume the liabilities in such case I agree to deliver to you my personal notes due serially in one, two, three, four, and five years for one-half of the total loss after same has been determined by an audit of the accounts and the loss has been determined by the sale of its assets and the collection of the accounts and liabilities due to Mokano Motor Sales Company.

"I further agree to put up as collateral on these notes, all stock of the Occident Oil and Refining Company now owned by me as soon as same can be cleared of indebtedness now against it.   The present amount of this holding is ten thousand dollars at par value of which five thousand dollars is used as collateral on a note of eleven thousand nine hundred dollars at the Fourth National Bank, which is further secured by ten thousand dollars of Union National Bank stock and two thousand dollars of Wichita Cattle Loan Company stock, which will first be disposed of and applied on this note.

"The five thousand dollars at the Union National Bank is on a guarantee of payment of a note of C. D. Forney *et al.,* which should be paid out of the proceeds of the Fortuna Oil & Gas Company, approximately one thousand four hundred dollars, in which case this five thousand dollars would be released.

                              "F. T. RANSOM."

Ransom also signed one of the notes on that same day and another on May 24th, just a few days later; and the chancellor evidently gave Ransom the benefit of all doubt by his finding, as exemplified in his decree.

Third.   Appellant insists that the corporation formed on May 1, 1919, assumed payment of all liabilities, a release or novation being thereby created.   Neither party acted on this hypothesis, as shown by the facts quoted, *supra.*

Fourth.   Appellant invokes the statute of limitations of three years as a bar to a recovery.

We have examined critically the answer and demurrer of defendant, and there is no such plea on file in this cause. This plea not having been submitted to the lower court, appellant cannot for the first time interpose a plea of the statute of limitation in this court.   *Central Trust Co.* v. *Meridian Light & Ry. Co.,* 106 Miss. 431, 63 So. 575, 51 L. R. A. (N. S.) 151, *Id.* (Miss.) 64 So. 216; *Hines* v. *Potts,* 56 Miss. 346; *Y. & M. V. R. R. Co.* v. *McGee-Dean Co.,* 115 Miss. 282, 76 So. 264; *Y. & M. V. R. R. Co.* v. *Kirk,* 102 Miss. 41, 58 So. 710, 834, 42 L. R. A. (N. S.) 1172, Ann. Cas. 1914C, 968; *Raleigh Co.* v. *Fortenberry,* 133 Miss. 467, 97 So. 722; *Standard Oil Co.* v. *National Surety Co.* (Miss.), 107 So. 559.

Fifth.   It is also contended that the chancellor erred in rendering a decree for an arbitrary sum without ordering reference to a master for a partnership accounting. While it is proper in complicated cases to refer an accounting to master this jurisdiction is vested in the chancery court; and our view of this record is that the chancellor did state an account, and the result is set forth in the decree.

The chancellor did not have to make a report to himself, nor was it necessary to set forth the details of the account in the decree.   Ransom admitted he owed one-half of these notes, but denied the partnership, and claimed that he signed these notes as an accommodation indorser, and therefore, did not owe Harroun.   But the chancellor found the facts against Ransom.

Looking to the whole record, we do not think the chancellor erred in rendering the final decree complained of by appellant, or that there was any showing that all ob-

tainable facts were not then before the court. Where all the facts are before the court, the accounting may be had and rendered by the court without appointing a master. The appointment of a master in such cases is within the discretion of the trial court, and the chancellor may make his own calculations, or have counsel do it, or refer same to a master.

In this case it would have been better if the chancellor had announced the basis upon which he ascertained the sum due. See *Hebron* v. *Kelly,* 77 Miss. 48, 23 So. 641, 25 So. 877.

Under our present practice in the chancery court, where important and vital testimony is usually heard orally by the court, and where a stenographer is employed, we doubt if the chancellors find it expedient to refer to a master except in unusual and rare cases. To us it is apparent that the chancellor adopted the basis indicated herein for his conclusion.

*Affirmed.*